Filed 6/30/15  P. v. Harris CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C075446 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 10F03102, 10F05045) |
| v. | |
| PAUL ANTHONY HARRIS, | |
| Defendant and Appellant. | |

A jury convicted defendant Paul Anthony Harris in November 2013 of nine counts of aggravated lewd conduct on three children under the age of 14, and found true the specified circumstance of multiple victims under the one strike sentencing law.  (Pen. Code, §§ 288, subd. (b)(1), 667.61, former subd. (e)(5) [now subd. (e)(4)].)[1]  Sentenced to nine consecutive one strike sentences of 15 years to life, defendant appeals.  (§ 667.61, subd. (b).)  Defendant's offenses occurred in the time frame of 2005 to 2006, and 2010.

Defendant contends that *People v. Soto* (2011) 51 Cal.4th 229 (*Soto*)—which held in part that victim consent cannot negate the duress element of aggravated lewd

---

[1] Undesignated statutory references are to the Penal Code.

1

conduct—constituted an unforeseeable expansion of statutory criminal liability that cannot be applied retroactively to him as a matter of due process. We find defendant's contention raises an arguable point, but ultimately is not helpful to defendant as to his sentence.

Defendant also contends the trial court unconstitutionally imposed seven of the one strike sentences without a jury finding that the offenses occurred on "separate occasions." We disagree with this contention.

We shall make a minor modification to the judgment, and affirm as modified.

## FACTUAL BACKGROUND

### 2005-2006 Incidents

Defendant moved in with his girlfriend D.J. in October 2005. While living with her, defendant molested D.J.'s nine-year-old daughter A.J. as many as 20 times. In the first incident, A.J. woke up to find herself naked, and a naked defendant lying on top of her. Defendant had sex with A.J. vaginally and orally, at times grabbing her head, pulling it closer, forcing her to continue, and causing her to cry. He told her he would kill her and her mother if she told anyone. These incidents comprised counts one through three.

The day after the first incident, defendant called A.J. and her friend M.E., a seven-year-old boy, into defendant's bedroom where he showed them a pornographic movie. He then took them into A.J.'s room where he instructed A.J. and M.E. to have sex mimicking the movie. Defendant also orally copulated M.E.'s penis and had M.E. do the same to him. These acts constituted counts four through seven.[2]

---

[2] M.E. consistently denied that any oral copulation took place between himself and defendant. M.E. also testified that when defendant told him and A.J. to take off their clothes, defendant—whom M.E. thought of as an uncle—did so matter-of-factly rather

2

Late in 2006, M.E. reported to an adult friend of A.J.'s mother that he (M.E.) had witnessed defendant molesting A.J. The friend reported this to A.J.'s mother, but she did not call the police because she was afraid Child Protective Services would take A.J. away.[3] A.J. first told her mother about these incidents in December of 2009.

*2010 Incident*

In March of 2010, D. Doe (D.D.), a 12-year-old girl, was staying the night at the house of her aunt, who was then dating defendant. D.D. woke up in the middle of the night to find defendant holding her down, inserting his finger into her vagina, and attempting to put his tongue in her mouth. After the incident, when D.D. threatened to tell someone, defendant threatened to kill her and her mother if she did. Frightened, D.D. did not report the incident to her mother, but several months later she confided in a friend. The friend reported the incident to D.D.'s mother who subsequently notified the police. These acts comprised counts eight and nine.

## DISCUSSION

### I. *Soto,* Arguably, Is an Unforeseen Judicial Enlargement of Criminal Liability but This Does Not Help Defendant on the Facts Here

Due process prohibits the retroactive application of a judicial enlargement of statutory criminal liability, if that enlargement is unexpected and indefensible in light of the law at the time of the conduct at issue. In other words, holding a defendant criminally liable for conduct that could not reasonably be anticipated to be prohibited violates due process. (*Bouie v. City of Columbia* (1964) 378 U.S. 347, 352-354 [12 L.Ed.2d 894, 899-

---

than demandingly. According to A.J., however, M.E. was scared and crying when defendant told M.E. to suck defendant's penis, and also cried when defendant made M.E. have sex with A.J.

[3] According to D.J., she was told about inappropriate touching but not about intercourse.

3

900]; *People v. Crew* (2003) 31 Cal.4th 822, 853; *People v. Morante* (1999) 20 Cal.4th 403, 431.)

Here, defendant claims the trial court—in line with a 2011 judicial enlargement of statutory criminal liability in *Soto*, *supra*, 51 Cal.4th 229—violated due process with a particular jury instruction. That instruction concerned the *aggravated* lewd conduct charges against defendant in all nine counts (i.e., lewd conduct with a child under 14 by force, duress, menace, or fear of bodily injury—§ 288, subd. (b)(1) (hereafter section 288(b)(1) or aggravated lewd conduct). In line with *Soto*, but contrary to prior case law, the instruction stated, "It is not a defense that the child may have consented to the act." (Judicial Council of Cal. Crim. Jury Instns. (Jan. 2006 rev.) CALCRIM No. 1111.)

Before proceeding any further, we note that a child under 14 cannot legally consent to sexual acts. (*Soto*, *supra*, 51 Cal.4th at pp. 233, 248, fn. 11 (maj. opn. of Corrigan, J.); see *id*. at p. 255 (conc. & dis. opn. of Werdegar, J.).) The question of consent implicated here by the challenged instruction is a narrower one: Can a child under 14 consent to an act so as to negate the element of duress required for section 288(b)(1), *aggravated* lewd conduct?

*Soto*, in 2011, in a 4-to-3 opinion, answered this narrower question, "no." (*Soto*, *supra*, 51 Cal.4th at p. 233.)

Before *Soto*, however, almost all the case law, beginning with a split decision from this court, *People v. Cicero* (1984) 157 Cal.App.3d 465 (*Cicero*), had reasoned that consent *is* a defense to a charge of aggravated lewd conduct involving duress, menace, or fear of bodily injury. That is because victim consent is inherently inconsistent with the perpetrator's use of duress, menace, or such fear. And this was so, notwithstanding that the Legislature in 1981 had deleted the phrase "and against the will of the victim" from the language of the aggravated lewd conduct statute (then § 288, subd. (b)) that had stated, "by use of force, violence, duress, menace, or threat of great bodily harm, *and*

4

*against the will of the victim . . . .*" (*Soto*, *supra*, 51 Cal.4th at pp. 233, 248 & fn. 12, italics added (maj. opn. of Corrigan, J.); *id.* at pp. 249-252 & fn. 3 (conc. & dis. opn. of Werdegar, J.); *Cicero*, *supra*, 157 Cal.App.3d at pp. 476-478, 481, 484-485.)

As *Cicero* explained, if the concept of violation of will is removed from the words "duress," "menace," and "threat," these words are left without substance. (*Cicero*, *supra*, 157 Cal.App.3d at p. 477.) Drawing from the law on rape, *Cicero* concluded that the Legislature's 1981 deletion of "against the will of the victim" was apparently designed to eliminate any requirement that the People prove resistance by the victim in a prosecution for aggravated lewd conduct. (*Cicero*, at pp. 480-481.)

The *Soto* majority, however, in 2011, was having none of the *Cicero* majority. (*Soto*, *supra*, 51 Cal.4th at pp. 241-244.) The *Soto* majority based its conclusion that victim consent is not a defense to aggravated lewd conduct on (1) the Legislature's 1981 deletion of "against the will of the victim" from the aggravated lewd conduct statute (former § 288(b) [now § 288(b)(1)]); (2) the view that this statute focuses on the defendant's wrongful conduct and not the victim's response to it; and (3) the legal incapacity of a child under 14 to consent to sexual relations. (*Soto*, at pp. 233, 241-244, 246, 248.) The *Soto* dissent of three, however, continued to agree with the *Cicero* majority of two, on consent being a defense to aggravated lewd conduct involving duress, menace, or fear of bodily injury (formerly, threat of bodily harm). (*Soto*, at pp. 249-256 (conc. & dis. opn. of Werdegar, J.).)

Against this backdrop, *Soto* arguably constitutes an unforeseen judicial enlargement of section 288(b)(1) aggravated lewd conduct liability with respect to duress, menace, or fear of bodily injury. Consequently, it is arguable, as defendant contends, that the trial court erred in instructing the jury—in the aggravated lewd conduct context of duress—that consent is not a defense to such a charge.

5

If we assume, then, for the sake of argument that the trial court erroneously instructed on consent as to the duress element, the error is of constitutional dimension. The error is a due process violation involving a judicial enlargement of statutory criminal liability applied retroactively. Accordingly, the standard of harmless error is whether it can be said beyond a reasonable doubt that the error did not contribute to the verdict. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711].)

***Counts One through Three***

With respect to the counts involving A.J. (on her own, counts one through three) and D.D. (counts eight and nine), we think it can be said beyond a reasonable doubt that the error did not contribute to the verdict.

As for A.J., she testified, without dispute, that defendant grabbed her, forced her, caused her to cry, and told her he would kill her and her mother if she told anyone of the acts.

D.D.'s undisputed testimony echoed A.J.'s, in that defendant held her down and threatened to kill her and her mother if she told anyone, leaving D.D. very frightened.

***Counts Four through Seven***

We cannot say, however, beyond a reasonable doubt, that the assumed instructional error regarding consent, did not contribute to the verdicts on counts four through seven, which involved A.J. and M.E., and M.E. alone. M.E. denied that any oral copulation took place between himself and defendant, and M.E. stated that defendant did not force A.J. and M.E. to have sex. A.J. disputed M.E.'s account. And the friend of A.J.'s mother testified that M.E. told him that M.E. had witnessed defendant trying to penetrate A.J. and had heard defendant say he would kill M.E., A.J., and their parents if they told (M.E. himself did not testify to witnessing any sexual touching between A.J. and defendant, and M.E. did not testify about any conversation with the friend of A.J.'s mother). Consequently, the assumed instructional error means the verdicts on counts four

6

through seven for section 288(b)(1) aggravated lewd conduct cannot stand. What can stand, however, and what even defendant does not dispute, is that counts four through seven can be reduced to convictions for section 288, subdivision (a), *nonaggravated* lewd conduct (hereafter section 288(a) or nonaggravated lewd conduct) based on the evidence presented here.

That leaves the question of sentencing regarding these four reduced section 288(a) convictions (counts four through seven). Defendant was sentenced to four consecutive one strike terms of 15 years to life for these counts, based on the one strike specified circumstance of multiple victims. (§ 667.61, subd. (e)(4) [former subd. (e)(5)].)

Under the current version of the one strike law, a simple violation of section 288(a) (nonaggravated lewd conduct) is an offense subject to the one strike enhanced term of 15 years to life (with the specified circumstance here of multiple victims). (§ 661.67, subds. (b), (c)(8), (e)(4).) However, under the one strike law in effect at the time defendant committed counts four through seven (between Oct. 2005 and Aug. 2006), a section 288(a) conviction was an offense subject to the one strike law, "*unless* the defendant qualifies for probation under subdivision (c) of Section 1203.066 [(i.e., defendant is the natural parent of the child [or equivalent]; probation is in the best interests of the child; rehabilitation is feasible; defendant is removed unless the best interests of the child dictate otherwise; and no threat of physical harm—if all these conditions are met, the trial court has the discretion to grant probation)]." (§ 667.61, former subd. (c)(7) [now subd. (c)(8)], italics added; see § 1203.066, former subd. (c).)

Thus, under the one strike law in effect at the time of counts four through seven, a simple conviction for section 288(a) (nonaggravated lewd conduct) was not sufficient to trigger one strike eligibility; there also had to be a finding that the defendant did not qualify for section 1203.066, former subdivision (c) probation.

7

*Probation*

Here, the trial judge effectively found that defendant did not qualify for probation. At sentencing, the trial judge announced that even if defendant were eligible for probation under section 1203.066, the judge would not grant it because the acts disclosed a very high degree of cruelty, viciousness and callousness by someone in a position of trust, indicating a serious danger to society. (Cal. Rules of Court, rule 4.421.)

Citing the *Apprendi-Blakely* line of United States Supreme Court decisions that implement the constitutional right to a jury trial, defendant contends the finding of probation qualification must be made by a *jury*, not a judge.[4] We disagree, for reasons we expressed in *People v. Benitez* (2005) 127 Cal.App.4th 1274 (*Benitez*).

As we prefaced in *Benitez*: Under the *Apprendi-Blakely* line, "any fact other than 'recidivism' that increases the punishment for an offense beyond the 'statutory maximum' (the maximum a trial court may impose on facts necessarily reflected in the jury verdict for the offense) must be the subject of a jury finding." (*Benitez*, *supra*, 127 Cal.App.4th at p. 1277.) Here, the jury found the "statutory maximum" punishment facts, as to counts four through seven, when it found, at a minimum, that defendant committed the one strike eligible offenses of section 288(a) nonaggravated lewd conduct as to those counts, and when it found the accompanying one strike specified circumstance of multiple victims. (§ 667.61, former subd. (e)(5) [now (e)(4)].) And, as we concluded in *Benitez*, "Finding a defendant ineligible for probation is not a form of punishment, because probation itself is an act of clemency on the part of the trial court. [Citation.] Because a defendant's eligibility for probation results in a *reduction* rather than an increase in the sentence prescribed for his offenses, it is not subject to the rule of [*Apprendi-*]*Blakely*." (*Benitez*, at p. 1278.)

---

**4** *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435]; *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403].

8

Accordingly, we shall modify the judgment to specify that defendant's convictions on counts four through seven are for violations of section 288(a) rather than for section 288(b)(1). Defendant's consecutive one strike sentence of 15 years to life for each of these four counts remains intact.

## II. A Jury Finding of "Separate Occasions" Is Not Constitutionally Required for One Strike Sentencing on Counts One Through Seven

Defendant contends the trial judge, in imposing one strike sentences of 15 years to life on counts one through seven, unconstitutionally found these offenses were committed on "separate occasions." Defendant maintains, once again, that the *Apprendi-Blakely* line of United States Supreme Court decisions requires the *jury* to make this factual finding.[5] We disagree.

At the time defendant committed counts one through seven, the one strike sentencing law of section 667.61, subdivision (g), stated as pertinent: "The [one strike] term . . . shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion. If there are multiple victims during a single occasion, the [one strike] term . . . shall be imposed on the defendant once for each separate victim. . . ." (Stats. 1998, ch. 936, § 9, p. 6876.)

We effectively rejected defendant's contention in *People v. Retanan* (2007) 154 Cal.App.4th 1219 (*Retanan*).

In line with *Retanan*'s reasoning, the "statutory maximum" punishment facts were established here, as required by *Apprendi-Blakely*, when the *jury* found him guilty in counts one through seven of an offense subject to the one strike law (§ 288(a) [nonaggravated lewd conduct] or § 288(b)(1) [aggravated lewd conduct]) and found true the one strike specified circumstance of multiple victims (§ 667.61, subds. (b), (c), (e)).

---

[5] See footnote 4, *ante*.

9

And, as we concluded in *Retanan*, "Subdivision (g) [of section 667.61 (which provides the basis of defendant's contention regarding the finding of 'separate occasions')], if it applied, would only act to *reduce* liability if defendant's culpability was less than the statutory penalty for his crimes. Mitigating the maximum statutory punishment does not fall within the rule of *Blakely* and *Apprendi*. The . . . finding [by the trial judge in *Retanan*] that the subdivision (g) exception does not apply because the offenses are separate does not increase defendant's maximum sentence." (*Retanan*, *supra*, 154 Cal.App.4th at p. 1230, italics added.) Consequently, the *Retanan* trial judge's finding of "separate occasions" under the one strike sentencing scheme was constitutionally proper. The same can be said for the trial judge here.

## DISPOSITION

The judgment is modified to specify that defendant was convicted, in counts four through seven, under section 288(a) rather than section 288(b)(1). As modified, the judgment is affirmed. The trial court is directed to amend the abstract of judgment to reflect this modification and to send a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.


                                                          BUTZ              , J.

We concur:


      RAYE              , P. J.


      RENNER            , J.


10